AUG - 2 2010

1
2
3
4
5
6        **UNITED STATES DISTRICT COURT**
7            **DISTRICT OF NEVADA**
8
9   JOHN HENRY PAGE,                    )
                                        )
            Plaintiff,                  )        3:09-cv-00136-RCJ-RAM
10                                      )
    vs.                                 )
11                                      )        **ORDER**
    K. GURRIES, *et al.*,               )
12                                      )
            Defendants.                 )
13                                      /
14          This is a prisoner civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff's application to
15   proceed *in forma pauperis* has been granted. (Docket #8). Before the Court is plaintiff's second
16   amended complaint (Docket #16) and motion for the appointment of counsel (Docket #17).
17   **I. Motion for Appointment of Counsel**
18          On March 29, 2010, plaintiff filed a motion seeking the appointment of counsel in this case.
19   (Docket #17). A litigant in a civil right action does not have a Sixth Amendment right to appointed
20   counsel. *Storseth v. Spellman*, 654 F.2d 1349, 13253 (9th Cir. 1981). In very limited circumstances,
21   federal courts are empowered to request an attorney to represent an indigent civil litigant. The
22   circumstances in which a court will make such a request, however, are exceedingly rare, and the court
23   will make the request under only extraordinary circumstances. *United States v. 30.64 Acres of Land*, 795
24   F.2d 796, 799-800 (9th Cir. 1986); *Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir. 1986).
25          A finding of such exceptional circumstances requires that the Court evaluate both the likelihood
26   of success on the merits and the plaintiff's ability to articulate his claims in pro se in light of the

1 | complexity of the legal issues involved.  Neither factor is dispositive, and both must be viewed together

2 | in making a finding.  *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991)(*citing Wilborn, supra*, 789

3 | F.2d at 1331).  The district court has considerable discretion in making these findings.  The Court will

4 | not enter an order directing the appointment of counsel.  As discussed below, there is no likelihood of

5 | success on the merits.  Plaintiff's motion for the appointment of counsel is denied.

6 | **II. Screening Standard**

7 | Pursuant to the Prisoner Litigation Reform Act (PLRA), federal courts must dismiss a prisoner's

8 | claims, "if the allegation of poverty is untrue," or if the action "is frivolous or malicious," "fails to state

9 | a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune

10 | from such relief."  28 U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon

11 | which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court

12 | applies the same standard under Section 1915(e)(2) when reviewing the adequacy of a complaint or

13 | amended complaint.

14 | Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v.*

15 | *Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim

16 | is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that

17 | would entitle him or her to relief.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In making

18 | this determination, the Court takes as true all allegations of material fact stated in the complaint, and the

19 | Court construes them in the light most favorable to the plaintiff.  *See Warshaw v. Xoma Corp.*, 74 F.3d

20 | 955, 957 (9th Cir. 1996).  Allegations in a *pro se* complaint are held to less stringent standards than

21 | formal pleadings drafted by lawyers.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404

22 | U.S. 519, 520-21 (1972) (*per curiam*); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

23 | (9th Cir. 1990).

24 | All or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the

25 | prisoner's claims lack an arguable basis either in law or in fact.  This includes claims based on legal

26 | conclusions that are untenable (*e.g.* claims against defendants who are immune from suit or claims of

2

1  infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual

2  allegations (*e.g.* fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989);

3  *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

4  **III. Second Amended Complaint**

5      Plaintiff names the following as defendants in the second amended complaint: Correctional Officer

6  Gurries; Warden Benedetti; Corrections Director Skolnik; Correctional Officer Aten; Correctional Officer

7  O'Brien; Sergeant Miller; Oasis Drug Program counselor Womack; and

8  Oasis Drug Program caseworker Ed Miller.

9      **A. Defendants in Their Official Capacities**

10     Plaintiff sues all defendants in both their individual and official capacities.  In *Kentucky v.*

11 *Graham*, the Supreme Court clarified the distinction between official and personal capacity suits.  473

12 U.S. 159, 165 (1984).  The Court explained that while individual capacity suits seek to impose personal

13 liability upon a government official for actions performed under color of state law, official capacity

14 actions generally represent another way "of suing an entity of which an officer is an agent." *Id.* (quoting

15 *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978)).  In order to establish

16 personal liability in a §1983 action, a plaintiff must show that an individual, acting under color of state

17 law, caused a deprivation of a federal right.  *Graham*, 473 U.S. at 166.  By contrast, in an

18 official-capacity action, a plaintiff must demonstrate that a policy or custom of an entity contributed to

19 the violation of a federal law.  *Id.*  That is to say, "the action that is alleged to be unconstitutional

20 implements or executes a policy statement, ordinance, regulation or decision officially adopted and

21 promulgated by that body's officers." *Monell*, 436 U.S. at 690.

22     "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

23 Constitution and laws of the United States, and must show that the alleged deprivation was committed

24 by a person acting under color of state law." *West*, 487 U.S. at 48 (citation omitted).  States and state

25 officers sued in their official capacities are not "persons" for purposes of a § 1983 action and may not

26 be sued under the statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  On the other

3

1    hand, § 1983 allows suits against state officers in their individual capacities for acts they took in their

2    official capacities. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). Individuals may not be sued in their official

3    capacities under § 1983 for their actions, and plaintiff again failed to allege that a policy or custom

4    contributed to violations of federal law, after being given an opportunity to amend his allegations in the

5    second amended complaint. Because plaintiff is unable to allege adequate facts for official capacity

6    liability, plaintiff's claims against all the defendants in their official capacities are dismissed with prejudice.

7    **B. Plaintiff's Claims**

8        Plaintiff characterizes each count of his complaint as a violation of his Eighth Amendment right

9    against cruel and unusual punishment. In Count I, plaintiff alleges that defendant Gurries wrote an

10   incident report alleging that plaintiff had attempted to incite a riot. In Count II, plaintiff claims that Sgt.

11   Miller improperly relied upon Officer Aten's statement at plaintiff's disciplinary hearing on the charges

12   of inciting a riot. In Count III, plaintiff claims that officer O'Brien packed up his property and sent it to

13   storage when he was taken to administrative segregation. Plaintiff claims that, as a result of defendant

14   O'Brien's actions, he was deprived of his walkman radio for several months. In Count IV, plaintiff

15   alleges that caseworker Ed Miller wrote a statement that plaintiff was non-compliant with the Oasis

16   Program. In Count V, plaintiff alleges that defendant Womack wrote a document stating that he was

17   non-communicative in the Oasis Program, and that he displayed resistance to the program. All of the

18   allegations in Counts I through V of the second amended complaint took place in March 2009, and relate

19   to the amended complaint. In Count VI of the second amended complaint, plaintiff makes the new

20   allegation that in July 2009, he received the wrong pills at "pill call." Plaintiff seeks compensatory

21   damages and seeks an order directing officer Gurries to have no further contact with him.

22   **C. Counts I, II, IV, and V**

23       Plaintiff characterizes all counts of his complaint as Eighth Amendment claims. To constitute

24   cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the

25   wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although

26   prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing,

1  shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107

2  (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries

3  stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted

4  with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, (9th

5  Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The deliberate indifference standard

6  involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms,

7  "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298

8  (1991)). Second, the prison official must "know of and disregard an excessive risk to inmate health or

9  safety." *Id.* at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying

10  humane conditions of confinement only if he knows that inmates face a substantial risk of harm and

11  disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. at

12  835. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk,

13  or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. *Id.* at 844-45. Mere

14  negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's

15  conduct must have been wanton. *Farmer v. Brennan*, 511 U.S. at 835; *Frost v. Agnose*, 152 F.3d at

16  1128; *see also Daniels v. Williams*, 474 U.S. 327, 33 (1986). In this case, the facts alleged by Plaintiff

17  do not support an Eighth Amendment claim.

18      It appears that Claims I, II, IV, and V of the second amended complaint involve issues of due

19  process rather than cruel and unusual punishment. In order to state a cause of action for deprivation of

20  procedural due process, a plaintiff must first establish the existence of a liberty interest for which the

21  protection is sought. In *Sandin v. Connor*, 515 U.S. 472, 487 (1995), the Supreme Court abandoned

22  earlier case law which had held that states created protectable liberty interests by way of mandatory

23  language in prison regulations. *Id.* Instead, the Court adopted an approach in which the existence of a

24  liberty interest is determined by focusing on the nature of the deprivation. *Id.* In doing so, the Court held

25  ///

26  ///

5

1  that liberty interests created by prison regulations are limited to freedom from restraint which "imposes

2  atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at

3  484.

4         A prisoner has a liberty interest when confinement imposes an "atypical and significant hardship

5  . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.  In *Sandin*, the Court

6  focused on three factors in determining that plaintiff possessed no liberty interest in avoiding disciplinary

7  segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation;

8  (2) a comparison between the plaintiff's confinement and conditions in the general population showed

9  that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's

10  sentence was not affected. *Sandin*, 515 U.S. at 486-87; *Resnick v. Hayes*, 2000 WL 654114, at *5 (9th

11  Cir., May 22, 2000).

12         Where a protected liberty interest exists, the Supreme Court has set out the following procedural

13  due process requirements for disciplinary detention of a prisoner: (1) written notice of the charges; (2)

14  at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that

15  the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely

16  on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense,

17  when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals;

18  (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally

19  complex. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

20         In the second amended complaint, plaintiff has not alleged that defendants caused him to

21  experience an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."

22  *Sandin*, 515 U.S. at 484.  In addition, plaintiff has not alleged that the procedural due process

23  requirements in the disciplinary hearing were inadequate. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

24  The Court advised plaintiff of these legal standards and gave plaintiff an opportunity to amend.  Plaintiff

25  is apparently unable to allege adequate facts to state a claim for a due process violation in Claims I, II,

26  IV, and V of the second amended complaint.  As such, these claims are dismissed with prejudice.

**D. Count III**

With respect to plaintiff's claim regarding his property being stored for several months, an authorized intentional deprivation of property is actionable under the Due Process Clause. *See Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Logan v. Zimmerman Brush Co.*, 455 U.S. at 436; *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987). Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). In the instant case, plaintiff alleges that he was deprived of his walkman radio because officer O'Brien confiscated and stored his property during his time in administrative segregation. The confiscation and storage of an inmate's personal property during the inmate's incarceration in administrative segregation is reasonably related to a legitimate penological interest. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). As such, Claim III is dismissed with prejudice.

**E. Count VI**

All of the allegations in Counts I through V took place in March 2009, and relate to the amended complaint. Plaintiff was given leave to file a second amended complaint to cure the deficiencies of the amended complaint. In Count VI of the second amended complaint, plaintiff makes the new allegation, that in July 2009, he received the wrong pills at "pill call." Plaintiff has not named any defendant in this action who knowingly gave him the wrong pills. Although federal pleading standards are broad, some facts must be alleged to support claims under Section 1983. *See Leatherman v. Tarrant County Narcotics Unit*, 113 S.Ct. 1160, 1163 (1993). Plaintiff has failed to allege that any of the named defendants knew of and disregarded an excessive risk to inmate health or safety. *See Farmer v. Brennan*, 511 U.S. at 837. As such, plaintiff fails to state an Eighth Amendment claim against any defendant in Count VI of the second amended complaint. As such, Count VI is dismissed with prejudice.

**F. Supervisory Liability**

Plaintiff sues defendants J. Benedetti, Warden of Northern Nevada Correctional Center, and Howard Skolnik, Director of the Nevada Department of Corrections, because of their supervisory responsibilities. Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). To show a *prima facie* case of supervisory liability, plaintiff must allege facts indicating that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy "'so deficient that the policy itself "is a repudiation of constitutional rights" and is "the moving force of the constitutional violation."'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under Section 1983. *See Leatherman v. Tarrant County Narcotics Unit*, 113 S.Ct. 1160, 1163 (1993). The Court previously granted plaintiff leave to amend facts to state a supervisory liability claim against defendants Beneditti and Skolnik. However, in the second amended complaint, plaintiff has not make any connection between defendants Benedetti and Skolnik and his claims in the body of the complaint. Accordingly, defendants Benedetti and Skolnik are dismissed with prejudice.

**IV. Conclusion**

**IT IS THEREFORE ORDERED** that plaintiff's motion for the appointment of counsel (Docket #17) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's claims against all the defendants in their official capacities are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that defendants Benedetti and Skolnik are **DISMISSED WITH PREJUDICE.**

8

1    **IT IS FURTHER ORDERED** that Counts I, II, IV, and V of the second amended complaint

2    are **DISMISSED WITH PREJUDICE.**

3    **IT IS FURTHER ORDERED** that Count III is **DISMISSED WITH PREJUDICE.**

4    **IT IS FURTHER ORDERED** that Count VI is **DISMISSED WITH PREJUDICE.**

5    **IT IS FURTHER ORDERED** that, as none of the counts of the second amended complaint

6    (Docket #16) survive screening, the complaint is **DISMISSED IN ITS ENTIRETY WITH**

7    **PREJUDICE** for failure to state a cognizable claim for violation of plaintiff's federal civil rights.

8    **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT** accordingly.

9    DATED this 3RD day of August, 2010.

10

11

12    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26